## WEBER *v.* ROGAN.

ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 107. Submitted December 1, 1902.—Decided January 19, 1903.

The Supreme Court of the State of Texas having decided that the statute of that State, Acts of 1897, c. 129, providing that certain lands *may be sold* at a specified price under certain conditions by the Commissioner of the General Land Office was not mandatory, but that it was discretionary with the Commissioner whether to sell such lands or not, no Federal question arises which this court can consider in a proceeding brought to compel the Commissioner to convey certain lands under such act to a person offering to purchase the same at the price specified in the act.

The constitutional inhibition against the impairment of contracts applies only to legislative enactments of the States and not to the judicial decisions or acts of the state tribunals or officers, under statutes in force at the time of the making of the contract, the obligation of which is alleged to have been impaired.

THIS was an original petition filed in the Supreme Court of Texas by the plaintiff in error, Weber, against Charles Rogan, Commissioner of the General Land Office of the State, praying for a writ of mandamus directing such Commissioner to award to the petitioner two isolated and detached sections of the public school lands, situated respectively in Polk and Jefferson Counties in the State of Texas.

The petitioner alleged in substance that on August 11, 1899, being desirous of purchasing such lands, he applied to the Commissioner for the same at the price fixed by law, $1 per acre, and otherwise fully complied with the terms of sale offered by law authorizing him to become the purchaser ; that the Commissioner refused and rejected his applications, for the reason that the two sections applied for had theretofore been classified—the first as timber land, and the second as grazing land, to neither of which the law was applicable, and could not be purchased under the law in force at the date of the application for one dollar per acre, though such grazing and timber lands were isolated and detached from other public lands, and were situated in counties organized prior to January 1, 1875, and that there was no law under which the petitioner could have lawfully awarded to him the two said sections at one dollar per acre. Petitioner admitted that said two sections were classified by the Commissioner, one as timber land and the other as grazing land, but averred that such classification was of no force or effect because the provisions of the law requiring lands belonging to the public school fund to be classified did not relate or apply to isolated and detached sections, or fractions of sections of such lands, situated in counties organized prior to January 1, 1875, but that the price of said lands was at that time fixed by law at one dollar per acre, irrespective of any classification made of said lands either before or after the time they became isolated and detached. That by application to the Commissioner and depositing with the treasurer of the State the amount due therefor, he became the purchaser of said two sections, and the Commissioner was without authority to withhold from him said lands.

Upon this petition the case was submitted upon briefs and oral arguments to the Supreme Court, which awarded a mandamus, 94 Texas, 62, subsequently granted a rehearing, 94 Texas, 67, and upon such rehearing filed an opinion refusing the writ, 94 Texas, 67.

Whereupon petitioner applied for and was granted a writ of error from this court, and assigned as error that the State had offered to sell all isolated and detached sections, and fractions

of sections of public school lands situated in counties organized prior to January 1, 1875, at one dollar per acre; that this offer by the State was accepted by the petitioner, and that such acceptance constituted a contract between the State and the purchaser, and that by holding that the Commissioner of the Land Office might decline to award the petitioner the lands applied for, the court gave a construction to the statute which impaired the obligation of such contract.

*Mr. F. Charles Hume* for plaintiff in error. *Mr. M. E. Kleberg* was with him on the brief.

*Mr. C. K. Bell,* attorney general of the State of Texas, for defendant in error.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

At the time the petitioner made his applications to the Commissioner of the Land Office for the purchase of these lands the following law was in force, 2 Batt's Rev. Stat. art. 4218 *y:*

" The Commissioner of the General Land Office may withhold from lease any agricultural lands necessary for the purpose of settlement, and no agricultural lands shall be leased, if, in the judgment of the Commissioner, they may be in immediate demand for settlement, but such lands shall be held for settlement and sold to the actual settlers only, under the provisions of this chapter; and all sections and fractions of sections, in all counties organized prior to the first day of January, 1875, except El Paso, Presidio and Pecos counties, which sections are isolated and detached from other public lands, *may be sold* to any purchaser, except to a corporation, without actual settlement, at one dollar per acre, upon the same terms as other public lands are sold under the provisions of this chapter." Acts of 1897, c. 129.

The Supreme Court held that the determination of the case depended upon the question whether it was made by this law the imperative duty of the Commissioner of the Land Office to sell all isolated and detached sections and parts of sections

of the public free school lands to the first applicant without regard to their classification; and that that construction depended upon the question whether the words " may be sold to any purchaser" implied a discretion in the Commissioner to refuse, or was to be understood as equivalent to " shall," which would imply a duty upon the part of the Commissioner to sell to any purchaser at the price fixed of one dollar per acre. At first, the court was of opinion that the word " may " was used in the sense of " shall"; that no discretion was vested in the Commissioner; that the general provisions regulating the sale of public school lands did not apply to isolated and detached sections and fractions of sections; that they required no classification or appraisement; that the law of 1897 fixed their purchase price absolutely at one dollar per acre; and that all that was necessary to acquire an inchoate title was to make application to the Commissioner and tender the proportion of the purchase money, required by law to be paid in cash, together with the statutory obligations for the balance. Upon rehearing, the opinion of the court was changed, and the majority came to the conclusion that the word " may," as used in the statute, ought to be construed in its literal sense, and as merely conferring the power upon the Commissioner to sell land at one dollar per acre, but not making it obligatory upon him to do so. The mandamus was denied. Another rehearing was also denied.

There is hardly a semblance of a Federal question in this case. None such was noticed in the original petition or in either opinion of the court; and it was not until after an application was made for a rehearing that petitioner discovered that the act of the legislature of 1895, as amended by the act of 1897, Rev. Stat. art. 4218*y*, above cited, constituted a contract on the part of the State to sell all isolated and detached sections and fractions of sections of public school lands to any purchaser who would offer one dollar per acre therefor, which had been impaired by the Supreme Court of the State in holding that the Commissioner of the Land Office might refuse to execute such contract by declining to award the lands applied for, and therefore violated its obligation.

We agree with the Supreme Court of the State that no contract was created by this statute. Hence, there was none to be impaired. We had occasion to hold in *Central Land Company* v. *Laidley,* 159 U. S. 103, that we have no jurisdiction of a writ of error to a state court upon the ground that the obligation of a contract has been impaired, when the validity of the statute under which the contract is made is admitted, and the only question is as to the construction of the statute by that court; and in the same case as well as in *Hanford* v. *Davies,* 163 U. S. 273, we held that the constitutional inhibition applies only to the legislative enactments of the State, and not to judicial decisions or the acts of state tribunals, or officers under statutes in force at the time of the making of the contract, the obligation of which is alleged to have been impaired.

In addition to this, however, the question was not made until after the final decision of the state court, and upon application for a rehearing. This was clearly too late. *Miller* v. *Texas,* 153 U. S. 535.

The writ of error is

*Dismissed.*